IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MORRISON ENTERPRISES, LLC, and CITY OF HASTINGS, Nebraska, | ) ) ) | |
| Plaintiffs, | ) ) | 4:08CV3142 |
| v. | ) ) ) | |
| DRAVO CORPORATION, | ) ) | MEMORANDUM AND ORDER ON MORRISON ENTERPRISES, LLC'S |
| Defendant. | ) ) ) | MOTION TO DISMISS AND MOTION TO STRIKE |

On July 3, 2008, the plaintiffs, Morrison Enterprises, LLC (Morrison) and the City of Hastings, Nebraska (Hastings), filed a complaint against Defendant Dravo Corporation (Dravo) seeking relief pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601 et seq. (CERCLA), and "applicable federal and state common law." (See Compl., filing 1, ¶ 1.) Dravo filed an answer to the complaint on September 8, 2008. (See generally Answer, filing 12.) The defendant's answer raises thirteen specific affirmative defenses and four counterclaims against the plaintiffs. (See id. at 20-26.) Now before me are Morrison's motion to dismiss the defendant's counterclaims, (filing 17), and Morrison's motion to strike the defendants second, third, fourth, sixth, and eighth affirmative defenses, (filings 16, 18, 25.)[1] For the following reasons, I find that Morrison's motions must be denied.

I.  BACKGROUND

The plaintiffs' complaint alleges as follows. Morrison is a Nebraska limited liability company with its principal place of business in Hastings, Nebraska. (Compl., filing 1, ¶ 12.)

---

[1]It appears that the briefs submitted by Morrison in support of its motion to strike have been docketed as separate motions. (See filings 16, 18, 25.) A review of filings 16, 18, and 25 reveals, however, that Morrison has in fact submitted only a single motion to strike.

1

Hastings is a municipal corporation organized under the laws of the State of Nebraska.  (Id. ¶ 13.)  The defendant is a Delaware corporation with corporate headquarters located in Pennsylvania.  (Id. ¶ 14.)

In 1983, the Nebraska Department of Health analyzed samples from Hastings drinking water wells and found contaminants.  (Id. ¶ 19.)  These contaminants included ethylene dibromide (EDB), carbon tetrachloride (CT), and other "volatile organic compounds."  (Id. ¶¶ 20, 24.)  Based on these analyses, the Environmental Protection Agency (EPA) designated the area as the Hastings Ground Water Contamination Superfund Site (HGWCS), and on June 10, 1986, the HGWCS was added to "the National Priority List."  (Id. ¶¶ 9, 21.)  The EPA determined that the contamination at the HGWCS originated from several source areas, or subsites: 1) the FAR-MAR-CO Subsite; 2) the North Landfill Subsite; 3) the South Landfill Subsite; 4) the Second Street Subsite; 5) the Colorado Avenue Subsite; 6) the Well No. 3 Subsite; and 7) the Hastings East Industrial Park Subsite.  (Id. ¶ 22.)  The EPA then notified a number of entities, including the plaintiffs and the defendant, "that they were potentially liable as responsible parties under CERCLA" for the contamination at these subsites.  (Id. ¶ 23.)  Specifically, Morrison was identified as a "potentially responsible party" (PRP) at the FAR-MAR-CO Subsite, from which EDB and CT have issued, (id. ¶ 24); the defendant was identified as a PRP at the Colorado Avenue Subsite, from which trichloroethylene (TCE) and "other volatile organic chemicals" have issued, (id. ¶ 25); the defendant and Hastings were identified as PRPs at the North Landfill Subsite, from which TCE has issued, and at the South Landfill Subsite, from which unspecified volatile organic compounds have issued, (id. ¶¶ 26, 27, 39); and Hastings was identified as a PRP at the Second Street Subsite, from which various contaminants such as benzene, toluene, ethyl benzene, zylene, and polynuclear aromatic hydrocarbons have issued, (id. ¶ 27).

Pursuant to a 1991 Administrative Order on Consent (AOC), "Morrison agreed to conduct a Remedial Investigation/Feasibility Study ("RI/FS") of the ground water operable unit of the FAR-MAR-CO Subsite . . . and to reimburse certain governmental response and oversight costs incurred with respect to work performed in connection with the completion of the RI/FS."  (Id. ¶ 29.)  On or about 1996, the AOC was amended to require "Morrison to complete an Engineering Evaluation/Cost Analysis ("EE/CA") to support a . . . groundwater removal action at

the FAR-MAR-CO Subsite." (Id. ¶ 30.) The amendment also "required Morrison to pay certain costs incurred by the government in connection with the negotiation of the AOC and the EPA's oversight of the removal action." (Id. ¶ 33.) When the amendment was proposed, the plaintiffs "negotiated an agreement to share certain costs associated with the investigation and cleanup of alleged releases of hazardous substances from the North Landfill and FAR-MAR-CO Subsite[s]." (Id. ¶ 31.)

In accordance with the amended AOC, an extraction well designated as "the Well-D System" was installed and put into operation. (Id. ¶ 34.) Though the system "was instituted to capture the contaminant plume from only the FAR-MAR-CO and North Landfill Subsites," (id. ¶ 39), it in fact captures "contaminated groundwater emanating from the FAR-MAR-CO, North Landfill, and Colorado Avenue Subsites." (Id. ¶ 35). The system has captured TCE from the groundwater, and although TCE is the primary contaminant from the North Landfill Subsite, the plaintiffs allege that "substantially all of the TCE captured by the Well-D System emanates from the Colorado Avenue Subsite." (Id. ¶ 39.) In essence, the plaintiffs claim that because TCE comprises 90% of the volume of the contaminants that Well-D extracts, and because most of this TCE comes from the Colorado Avenue Subsite (for which the defendant is a PRP), the defendant should be responsible for up to 90% of the past and future costs associated with the design, construction, operation, and maintenance of the Well-D System. (Id. ¶¶ 41- 44.)

The plaintiffs' complaint includes seven causes of action. (See generally Compl., filing 1.) Count I of the complaint alleges that the plaintiffs are entitled to a "recovery of response costs pursuant to 42 U.S.C. § 9607(a)." (See Compl., filing 1, ¶¶ 45-56.) Count II alleges that the plaintiffs are entitled to "a declaratory judgment . . . for response costs incurred and future response costs or damages to be incurred, as a result of the release or threatened release of hazardous substances." (Id. ¶ 58 (citing, inter alia, 42 U.S.C. § 9613(g)(2)); see also id. ¶¶ 57, 59.) Count III, which is titled "Non-Contractual Indemnity," alleges that the defendant should bear Morrison's "costs associated with the remediation of TCE contamination emanating from the Colorado Avenue Subsite." (Id. ¶ 69; see also id. ¶¶ 60-68.) Count IV, titled "Negligence," alleges that the defendant breached its duty to Hastings "to operate and maintain its facility in such a manner as to prevent soil and groundwater contamination," which caused Hastings to

suffer damages. (See id. ¶¶ 70-79.) Counts V through VII–which, like Count IV, are brought on behalf of Hastings alone–allege claims of "Private Nuisance," "Public Nuisance," and "Trespass," respectively. (See id. ¶¶ 80-98.)

As noted above, the defendant's answer to the complaint includes thirteen specific affirmative defenses and four counterclaims. (See Answer, filing 12, at 20-26.) In Counterclaim I, the defendant alleges that in the event that it "is found liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)[,] for plaintiffs' past or present response costs, Dravo is entitled to contribution from Plaintiffs pursuant to § 113(f) of CERCLA, 42 U.S.C. § 96113(f)(1), and a set-off for the contamination caused by others who are responsible for the contamination of soil and ground water in Hastings." (Answer, filing 12, Part X, ¶ 2.) In Counterclaim II, the defendant alleges that in the event that it "is found liable for Morrison's past or future response costs pursuant to Count III of the Complaint . . . , Dravo is entitled to indemnification from the City." (Id. ¶ 5.)[2] In Counterclaim III, the defendant alleges that in the event that it "is found liable for the damages to the City's water system pursuant to Counts IV through VII [of the complaint], Dravo is entitled to contribution from Morrison and the City, as well as a set-off for the contamination caused by others who are responsible for the contamination of the soil and ground water in Hastings." (Id. ¶ 8.) Finally, Counterclaim IV alleges that the PRPs at the North Landfill Subsite have borne an excessive share of the costs of the operation of the Well-D System, and the defendant is therefore "entitled to reimbursement from the City and Morrison for costs already paid and a declaration from the Court as to its responsibility for any past costs of the operation" of the system. (Id. ¶ 12.)

Morrison has moved to dismiss the defendant's counterclaims and to strike five of the defendant's affirmative defenses. (See filings 16-18.) My analysis of these motions follows.

---

[2]The defendant also alleges, however, that "Plaintiffs, rather than Dravo, are responsible for all or substantially all of the response costs incurred by Morrison." (Answer, filing 12, Part X, ¶ 6.) Therefore, it is not clear whether Count II of the defendant's counterclaims is directed solely toward Hastings, as paragraph 5 suggests, or toward both plaintiffs.

## II. MORRISON'S MOTION TO DISMISS THE DEFENDANT'S COUNTERCLAIMS

Morrison argues that all four of the defendant's counterclaims must be dismissed "because they are fatally flawed in their legal premises and thus fail to state a claim upon which relief can be granted." (Filing 17 at 1.) I disagree.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curium). "Specific facts are not necessary; the statement need only '"give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" Id. (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)). Nevertheless, "a viable complaint [or counterclaim] must . . . include 'enough facts to state a claim to relief that is plausible on its face.'" Hogue v. Palisades Collection, LLC, 494 F. Supp. 2d 1043, 1046 (S.D. Iowa 2007) (quoting Twombly, 127 S. Ct. at 1974). This does not mean that a case should be "dismissed simply because the court is doubtful that the [claimant] will be able to prove all of the necessary factual allegations." Id. at 1046-47 (citations omitted). See also Twombly, 127 S. Ct. at 1965. However, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Hogue, 494 F. Supp. 2d at 1046 (quoting Twombly, 127 S. Ct. at 1965). See also, e.g., Benton v. Merrill Lynch & Co., Inc., 524 F.3d 866, 870 (8th Cir. 2008) ("The complaint must allege facts which, when taken as true, raise more than a speculative right to relief."). When ruling on a Rule 12(b)(6) motion to dismiss a counterclaim, the allegations of the counterclaim must be taken as true, e.g., Walker Process Equipment, Inc. v. Food Machinery and Chemical Corp., 382 U.S. 172, 174-75 (1965), and "all reasonable inferences . . . must be drawn in favor of the nonmoving party," Crumpley-Patterson v. Trinity Lutheran Hosp., 388 F.3d 588, 590 (8th Cir. 2004).

Morrison argues that each of the defendant's four counterclaims must "fail because Dravo has no right to contribution from Morrison, as Morrison is not a potentially responsible party with respect to TCE contamination emanating from the Colorado Avenue Subsite." (Filing 17, Attach. 1, Pl.'s Br., at 4.) More specifically, Morrison argues,

> The fatal flaw with respect to Dravo's counterclaims is that Morrison is not jointly or severally liable to Dravo for the costs which Morrison has incurred remediating TCE contamination emanating from the Colorado Avenue Subsite of

5

> the HGWCS.  Nor is Morrison jointly or severally liable to Dravo for any damages the City has incurred with respect to the City's water delivery system and other parts of its water system facilities as a result of migration of the TCE plume emanating from the Colorado Avenue Subsite.  More specifically, Morrison is not responsible for <u>any</u> releases of TCE.  Therefore, Morrision is not responsible for any of the costs it has incurred remediating the TCE contamination emanating from the Colorado Avenue Subsite.  Consequently, all costs related to the remediation of TCE . . . are costs that Morrison has incurred as an innocent party.

(<u>Id.</u> at 5.)  In short, Morrison claims that because it "is not responsible for any release of TCE, Dravo is unable to prove the most essential element necessary to prevail on its contribution claims."  (<u>Id.</u> at 6.)  Morrison re-emphasizes this argument in its reply brief, stating, "Dravo knows the administrative record for the [HGWCS] is void of <u>any</u> evidence of the use and or release of TCE by Morrison," and, "[A]ny statements by Dravo as to the use or release of TCE by Morrison are false allegations made only in an attempt to fabricate a situation in which its contribution counterclaims would not be subject to dismissal."  (Filing 27 at 2.)

The complaint does indeed allege that "[t]here is no evidence that Morrision used TCE at any time," and that "[s]ubstantially all of the TCE pumped and extracted by the Well-D System originates from the Dravo plant at the Colorado Avenue Subsite."  (Compl., filing 1, ¶¶ 40, 43.)  The defendant denies these allegations, however.  (<u>See</u> Answer, filing 12, ¶¶ 40, 43.)  At this stage all reasonable inferences must be drawn in the defendant's favor, <u>see, e.g.</u>, <u>Crumpley-Patterson</u>, 388 F.3d at 590, and even if Morrison's responsibility for the TCE captured by Well-D is "doubtful in fact," it does not follow that the defendant's counterclaim fails to state a claim upon which relief may be granted, <u>Twombly</u>, 127 S. Ct. at 1965.  In short, I am not persuaded that the defendant's counterclaims must be dismissed based on Morrison's mere allegation that it is not responsible for any TCE discharges where, as here, that allegation has been denied.[3]

Morrison also argues that Counterclaim IV must be dismissed because it confuses the issues, raises issues outside the scope of the complaint, and involves parties not a part of the

---

[3] I am mindful of Morrison's claim that the evidence will show that it is not responsible for the release of TCE.  (<u>See, e.g.</u>, filing 27 at 2 (referring to "the administrative record" for the HGWCS).)  But no evidence on this point is before me presently.  Moreover, even if such evidence were before me, I would be required to convert Morrison's motion to dismiss into a motion for summary judgment before considering the evidence.  <u>See</u> Fed. R. Civ. P. 12(d).

6

litigation. (See filing 17, Attach. 1, Pl.'s Br., at 6, 9.) Morrison adds that Counterclaim IV is not a "compulsory counterclaim." (See id. at 7-9.) I am not convinced, however, that Counterclaim IV must be dismissed. Morrison's argument that Counterclaim IV confuses the issues, raises new issues, and involves persons or entities who are not parties to this action is skeletal and includes no citations to supporting authority. Also, as the defendant correctly notes, the fact that the counterclaim may not be a compulsory counterclaim within the meaning of Federal Rule of Civil Procedure 13(a) does not constitute a sufficient basis for dismissal. See, e.g., Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.").

Morrison has not shown that any of the defendant's counterclaims fails to state a claim upon which relief may be granted. Its motion to dismiss will therefore be denied.

### III. MORRISON'S MOTION TO STRIKE AFFIRMATIVE DEFENSES 2, 3, 4, 6, AND 8

Morrison has moved to strike the defendant's second, third, fourth, sixth, and eighth affirmative defenses, arguing that the defenses "are insufficient and should be stricken because they are simply conclusory statements that serve only to confuse the issues and are not valid legal defenses to the action." (Filing 18 at 1.) Morrison's motion will be denied.

A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Conversely, "[a] motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear." Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977) (quoting 2A Moore's Federal Practice ¶ 12.21 at 2437 (2d ed. 1975)). Although "[j]udges enjoy liberal discretion to strike pleadings under rule 12(f)," the Eighth Circuit has stated that "[s]triking a party's pleading . . . is an extreme and disfavored measure." BJC Health System v. Columbia Casualty Co., 478 F.3d 908, 917 (8th Cir. 2007) (citations omitted).

Morrison moves to strike the defendant's second affirmative defense, which states, "Plaintiffs are barred from proceeding pursuant to Section 107(a) of CERCLA as their claims are

for contribution." (Answer, filing 12, at 21.) Morrison argues that this defense must be stricken because it "is a conclusory statement not founded in law and serves only to confuse the issues by mischaracterizing Morrison's claim." (Filing 18, Attach. 1, Pl.'s Br. at 4.) More specifically, Morrison asserts that the second affirmative defense confuses the issues by attempting to "rename" Morrison's "cost recovery" claim as a claim for contribution. (See id. at 5.) The defendant responds that in its view, the plaintiffs' claim "should proceed as a contribution claim" under Section 113(f) of CERCLA, not as a cost-recovery claim under Section 107(a) of CERCLA. (Filing 22, Def.'s Br. at 8.) It adds that its second affirmative defense is adequate to "put [Morrison] on notice of this aspect" of its defense. (Id. at 9.) In reply, Morrison argues that because it is not responsible for any release of TCE–from the Colorado Avenue Subsite or anywhere else–its claim cannot be one for contribution. (See filing 25, Pl.'s Reply Br. at 1-4.)

As noted above, the parties dispute whether Morrison is responsible for releases of TCE. (See supra Part II.) The source of the TCE captured by the Well-D System is also in dispute. (See id.) I am not persuaded that the defendant's second affirmative defense ought to be stricken before these questions are explored; nor am I persuaded that the defense is insufficient as a matter of law. The second affirmative defense will not be stricken.

The defendant's third affirmative defense states,

> Plaintiffs are not entitled to recovery of their past or future response costs because[:] (a) Plaintiffs claim is a claim for contribution; and (b) Plaintiffs failed to bring their claim for response costs within three (3) years after the date of an administrative order under Section 122(h) of CERCLA.
>
> Alternatively, Plaintiffs are not entitled to recovery of their past or future response costs pursuant to §107(a) of CERCLA because: (a) the alleged removal actions undertaken in 1997 were in fact remedial actions as defined by CERCLA; and (b) the Plaintiffs failed to bring their claim within six years after the initiation of physical on-site construction of the Well D System.

(Answer, filing 12, at 21.) Morrison moves to strike the first paragraph of this defense, arguing that it "fails as a matter of law because Plaintiff's CERCLA claim is a cost recovery action pursuant to Section 107(a); it is not a claim for contribution." (Filing 18, Attach. 1, Pl.'s Br. at 5.) It adds that "Dravo is confusing the issues by asserting the statute of limitations for contribution actions." (Id.) In response, the defendant argues that the relevant portion of the

8

third affirmative defense "builds on" the second affirmative defense (i.e., that Morrison's claim is actually a claim for contribution under Section 113(f) of CERCLA) by adding a statute of limitations defense. (Filing 22, Def.'s Br. at 9.) I find that the third affirmative defense is not insufficient as a matter of law, and, as I noted in my analysis of the defendant's second affirmative defense, the third defense is based on questions of fact which remain to be explored. The defense will not be stricken.

The defendant's fourth affirmative defense states,

> Plaintiff Morrison is not entitled to recovery of its past and future response costs pursuant to its cause of action for non-contractual indemnity, and the City is not entitled to recovery of its past and future response costs pursuant to its causes of action for negligence, private nuisance, public nuisance and trespass because they are barred by the applicable state and federal statute of limitations.

(Answer, filing 12, at 21.) Morrison moves to strike this defense, arguing that it "fails to comply with [Federal Rule of Civil Procedure] 8, which requires affirmative defenses to set forth a 'short and plain statement' of facts sufficient to afford Morrison an opportunity to respond." (Filing 18, Attach. 1, Pl.'s Br. at 6 (citations omitted).) Morrison adds that it has no meaningful opportunity to respond to this defense because the defendant did not "cite a statute or provide any legal basis for its defense" or "provide any facts concerning when the statute of limitations begins or accrues." (Id.)

In support of its argument, Morrison cites Buttice v. G.D. Searle & Co., 938 F. Supp. 561, 565 (E.D. Mo. 1996). (See filing 18, Attach. 1, Pl.'s Br. at 6.) It seems to me, however, that Buttice undermines Morrison's position. In Buttice the court stated,

> Plaintiff objects that defendant did not adequately allege the statute of limitations as an affirmative defense in its answer because defendant did not state the specific statutes upon which it relied. This objection is without merit. Paragraph 26 of defendant's Answer under the heading "Second Affirmative Defense" states in pertinent part, "Plaintiff's claims are barred by the applicable statute of limitations." This satisfies the requirements of Rule 8(c) of the Federal Rules of Civil Procedure, as the purpose of the rule is to "put opposing parties on notice of affirmative defenses and to afford them the opportunity to respond" thereto. See Daingerfield Island Protective Soc. v. Babbitt, 40 F.3d 442, 444 (D.C. Cir. 1994) (answer which stated, "Plaintiffs' claims are barred by the applicable statute of limitations" met the requirements of Rule 8(c)). A limitations defense "need not be articulated with any rigorous degree of specificity

and is sufficiently raised for purposes of Rule 8 by its bare assertion."
Daingerfield, 40 F.3d at 445 (citations and internal punctuation omitted).

938 F. Supp. at 565. The fourth affirmative defense will not be stricken.

The defendant's sixth affirmative defense states, "Morrison is not entitled to recover on its claim for non-contractual indemnity because it has a legal obligation to remove contaminants through the Well D System and is the primary beneficiary of the Well D System." (Answer, filing 12, at 22.) Morrison argues that this defense is "a conclusory statement not founded in the law," and therefore must be stricken. (See filing 18, Attach. 1, Pl.'s Br. at 6.) It adds,

> Morrison's non-contractual indemnity claim against Dravo arises from the Well-D System's removal of TCE emanating from the Colorado Avenue Subsite of the HGWCS, for which Morrison has no legal obligation. Because Morrison has no legal obligation to address TCE emanating from the Colorado Avenue Subsite of the HGWCS, which is captured and remediated by the Well-D System, Dravo's Sixth Defense should be stricken.

(Id. at 6-7.) As noted repeatedly above, the parties dispute whether the Well-D System captures TCE from the Colorado Avenue Subsite and whether Morrison is responsible for releases of TCE. I am not persuaded that the sixth affirmative defense does not fairly present a question of law or fact that ought to be considered, nor am I persuaded that the defense is insufficient as a matter of law. The defense will not be stricken.

Finally, Morrison moves to strike the defendant's eighth affirmative defense, which states,

> Plaintiffs are not entitled to recovery of their response costs pursuant to the Nebraska State claims asserted in Counts III through VII of the Complaint because those claims are preempted by the Comprehensive Environmental Response and the Compensation and Liability Act of 1980, 42 U.S.C. §§9601 *et seq.*, as amended by the Superfund Amendments and Reauthorization Act of 1983, Pub. L. 99-499 ("CERCLA").

(Answer, filing 12, at 22.) In support of its motion to strike, Morrison argues that "CERCLA expressly preserves state law claims with respect to the release of hazardous substances." (Filing 18, Attach. 1, Pl.'s Br. at 7 (citing 42 U.S.C. § 9614(a)).) Indeed, 42 U.S.C. § 9614(a) provides, "Nothing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." In response, the defendant argues that its defense is based on 42 U.S.C. § 9614(b),

10

which states,

> Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

The defendant adds that according to at least one court, "this section of CERCLA, in preventing double recovery for the same costs, preempts state law." (Filing 22, Def.'s Br. at 13-14 (citing, inter alia, Ashtabula River Corp. Group II v. Conrail, Inc., 549 F. Supp 2d 981 (N.D. Ohio 2008)).)

In reply, Morrison concedes that its state law claims are preempted, but only "to the extent [Morrison] recovers 'compensation for the same removal costs or damages' as it may receive on its CERCLA claims." (See filing 25, Pl.'s Reply Br. at 5-6.) It adds that "Dravo's absolute assertion that Morrison's state law claims are preempted, as originally pled by Dravo, is a misstatement of law." (Id. at 5.) It seems to me that the eighth affirmative defense would have clearer had it alleged a "preclusion" of double recoveries as opposed to a "preemption" of all state claims. I note, however, that in Ashtabula River Corporation Group II, the court held that because the complaint sought exactly the same damages under CERCLA and under state law, CERCLA preempted the plaintiff's right to recover under state law, and the state law claims were therefore subject to dismissal. 549 F. Supp. at 985-86. In light of this holding, and in view of Morrison's concession that "preemption" might occur under certain circumstances, I find that the eighth affirmative defense is not insufficient as a matter of law and that it raises a question that ought to be heard. The defense will not be stricken.

**IT IS ORDERED** that Morrison's motion to dismiss, (see filing 17), and motion to strike, (see filings 16, 18, 25), are denied.

Dated November 6, 2008.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

11