IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MORRISON ENTERPRISES, LLC, and CITY OF HASTINGS, Nebraska, | ) ) ) | |
| Plaintiffs, | ) ) | 4:08CV3142 |
| v. | ) ) | |
| DRAVO CORPORATION, | ) ) | MEMORANDUM AND ORDER |
| Defendant. | ) ) | |

The plaintiffs' complaint alleges that during defendant Dravo Corporation's ("Dravo") ownership and operation of facilities in Hastings, Nebraska, solvents were leaked and spilled causing soil and groundwater contamination. The plaintiffs' complaint alleges an extraction well, referred to as the "Well-D System," is being used to actively remediate the contaminant plume emanating from Dravo's FAR-MAR-CO, North Landfill, and Colorado Avenue facilities. Morrison Enterprises LLC, ("Morrison"), and the City of Hastings have filed state and federal claims seeking recovery of past and future response and remediation costs they have and will incur due to Dravo's alleged release of hazardous substances. This litigation will decide who is legally liable for the costs of the hazardous waste cleanup, and whether and how those costs should be allocated among the parties. Filing Nos. 53 & 63.

The following discovery motions are pending and fully submitted:

- Morrison's motions to compel Dravo's response to Morrison's Second Request for Production of Documents served on May 29, 2009, (filing nos. 138 & 141);

- Morrison's motion for protective order, (filing no. 189);

- Morrison's motion to quash the subpoena issued to Steven P. Larson, (filing no. 195); and

- Morrison's motion to quash the subpoena issued to Harvey Cohen, (filing no. 198).

The following motion is not fully submitted, but an interim order should be entered to avoid potentially unnecessary litigation costs:

- Dravo's motion for protective order, (filing no. 245).

## LEGAL ANALYSIS

### Dravo's Motion for Protective Order
(Filing No. 245)

On August 3, 2009, Morrison served a 30(b)(6) notice of deposition on defendant Dravo, the deposition to commence on August 11, 2009, beginning at 9:00 a.m. Filing No. 247-2, at CM/ECF pp. 2-3. Pursuant to Exhibit A of the notice, the 30(b)(6) deponent is to answer forty areas of inquiry, all of which relate to Dravo's net worth, financial assets, and the existence of any insurance policies or coverage for the payment of any damage award in this case. Filing No. 247-2, at CM/ECF pp. 5-7.

Dravo has moved for a protective order. Filing No. 245. Dravo argues the information sought in the 30(b)(6) notice is irrelevant to any determination of Dravo's liability, the plaintiffs' damages, or the proper allocation of damages among the parties; Dravo would need to expend substantial efforts to gather the requested information, and the testimony of multiple corporate officers may be required; and Dravo has offered a reasonable alternative to resolve this discovery dispute, but Morrison has failed to respond. Specifically, Dravo's motion states:

> Counsel for Dravo has advised Morrison's Counsel that Dravo is willing to provide Morrison with an affidavit from an Officer of Dravo which will state that Dravo is an existing Pennsylvania Corporation and has not, after May 16, 2008, the date of Morrison's demand with respect to its claim, transferred the stock of any of Dravo Corporation's subsidiaries to its parents or other affiliates.
>
> . . . Dravo believes the offer of an affidavit as set forth in the previous paragraph is a sincere attempt to resolve this discovery dispute, but as of the filing of this motion, the parties have been unable to reach an accord.

Filing No. 245, ¶¶ 11-12.

Based on the evidence of record, when Morrison deposed Lisa Potts, a former Dravo employee, on July 15, 2009, Potts testified Dravo no longer exists, and has no operating entities or employees. Filing No. 216-5, at CM/ECF pp. 3-4. These deposition responses apparently prompted Morrison to serve written discovery, (see filing no. 216, "Plaintiff Morrison Enterprises, LLC's Motion to Shorten Time to Respond to Discovery or in the Alternative to Extend the Written Discovery Deadline"), and a 30(b)(6) notice of deposition on July 31, 2009, (filing no. 217), both discovery methods aimed at determining if Dravo is solvent or has assets or insurance coverage to draw upon for payment of any judgment Morrison may obtain against Dravo.

Dravo was ordered to respond to Morrison's motion to obtain discovery responses out of time, (filing no. 216), on or before August 13, 2009. In the interest of expediency, the court considers Dravo's brief in support of its filing 245 motion for protective order (filing no. 246), as responsive to Morrison's filing 216 motion. Morrison will be afforded an opportunity to respond to Dravo's filing 245 motion for protective order. However, the parties are admonished to consider the following law, and in accordance with that law, attempt to resolve their discovery disputes over

Dravo's financial status, (filing nos. 216 & 245), without further court intervention.

The mandatory initial disclosure provisions of Rule 26(a)(1)(D) of the Federal Rules of Civil Procedure state:

> . . . a party shall, without awaiting a discovery request, provide to other parties:
> . . . .
> (D) for inspection and copying as under Rule 34 any insurance agreement under which any person carrying on an insurance business may be liable to satisfy part or all of a judgment which may be entered in the action or to indemnify or reimburse for payments made to satisfy the judgment.

Fed. R. Civ. P. 26(a)(1)(D). Therefore, to the extent Morrison seeks discovery of any insurance agreements or policies that may pay any judgment entered against Dravo in this litigation, or may reimburse Dravo for amounts Dravo pays on any judgment entered in favor of Morrison, such documents were subject to mandatory disclosure even in the absence of a discovery request.

The rules allowing discovery of insurance coverage for payment of judgments were adopted to promote settlement and avoid protracted litigation by enabling "counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation." Advisory Committee Note to Fed.R.Civ.P. 26(b)(2), 1970 Amendment. However, as further reflected in the Advisory Committee notes, although defendant's insurance coverage and financial status are both relevant to determining if assets exist to pay a judgment, these topics are not treated the same under the Rules.

> The [Rule] is limited to insurance coverage, which should be distinguished from any other facts concerning defendant's financial status (1) because insurance is an asset created specifically to satisfy the

claim; (2) because the insurance company ordinarily controls the litigation; (3) because information about coverage is available only from defendant or his insurer; and (4) because disclosure does not involve a significant invasion of privacy.

Advisory Committee's Explanatory Statement Concerning Amendments of the Discovery Rules, 48 F.R.D. 487, 499 (1970).

While a defendant's financial status may be relevant if the plaintiff's complaint requests an award of punitive damages, (Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc., 130 F.R.D. 149, 151 (D. Kan. 1990)(collecting cases)), plaintiffs Morrison and the City of Hastings are not seeking an award of punitive damages in this litigation. Based on the facts and allegations of record, it does not appear defendant's financial status is relevant to the issue of Dravo's liability. Many of Morrison's requests appear to seek information concerning the location of defendant's assets to evaluate the likelihood of being able to collect an award against Dravo. Such discovery is generally not permitted. Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2010, p. 184 (1994). See e.g., Oriental Commercial & Shipping Co., Ltd. v. Rosseel, N.V., 125 F.R.D. 398, 401 (S.D.N.Y. 1989); Bogosian v. Gulf Oil Corp., 337 F.Supp. 1228 (D.C. Pa. 1971)(holding questions regarding financial arrangements between plaintiff and his counsel, and regarding plaintiff's net worth and his ability to satisfy judgment for costs in the event the defendants prevailed were not proper).

Morrison and Dravo will be ordered to confer regarding resolution of filings 216 and 245. Morrison and Dravo will either file a joint statement on or before August 17, 2009, advising the court that these motions are resolved, or Morrison will file a brief in response to Dravo's motion for protective order (filing no. 245), on or before August 17, 2009. In the interim, and pending either the parties' agreement to the contrary, or a court ruling on Dravo's motion for protective order, (filing no. 245), Morrison's noticed 30(b)(6) deposition is stayed.

## Morrison's Motions to Compel
(Filing Nos. 138 & 141)

Morrison's motions to compel, (filing nos. 138 & 141), appear to be duplicates. The defendant's response to the motions states that during the hours before the filing of Morrison's motions, the parties were negotiating an agreement on the scope of defendant's production and how certain proprietary information would be treated. The defendant further states Dravo and Morrison have reached an agreement "on the scope of the information and documents to be provided as well as an agreement which inter alia provides that the information and documents disclosed would not be used outside of the instant litigation and which requires Morrison to provide a list of the names of the individuals to whom the information has been disclosed." Filing No. 151, ¶ 3. Morrison did not reply to defendant's response. It therefore appears Morrison's motions to compel, (filing nos. 138 & 141), have been resolved without court intervention, and the motions will be denied as moot.

## Morrison's Motion for Protective Order
(Filing No. 189)

Morrison has moved for a protective order, (filing no. 189), regarding Dravo's requests for production of documents exchanged between Morrison and its insurer(s), and Dravo's 30(b)(6) notice of deposition requesting testimony from Morrison's corporate representative as to alleged claims, agreements, or reimbursements between Morrison and its Insurer(s).

Dravo's written discovery served on July 7, 2009, requested production of:

1. Any and all documents containing or referring to Morrison's claims against its Insurer(s) for reimbursement of Morrison's costs in responding to the release of hazardous substances at the

> FAR-MAR-CO Subsite, including, but not limited to, a request to provide a defense and/or to indemnify Morrison.
>
> 2. Any and all agreements between Morrison and Morrison's Insurer(s) to pay all or part of the costs incurred by Morrison to respond to the release of hazardous substances at the FAR-MAR-CO Subsite.
>
> 3. The agreement between Morrison and its Insurer(s) regarding payment of Morrison's costs at the FAR-MAR-CO Subsite referred to in the June 25, 2009 deposition of Kenneth Morrison.

Filing No. 191-2, at CM/ECF p. 5. Dravo's 30(b)(6) deposition notice requested testimonial discovery on each of the topics identified in the foregoing requests for production, and further requested witness testimony regarding "[h]ow Morrison treats for accounting purposes any sums it has received from Morrison's Insurer(s) to reimburse Morrison for costs resulting from the release or alleged release by Morrison of hazardous substances at the FAR-MAR-CO Subsite." Filing No. 191-3, at CM/ECF p. 4.

Morrison argues it has no insurance policies that afford Dravo any third-party coverage for the claims raised in this litigation, and therefore documentation of claims made by Morrison to its insurer(s) for recovery of hazardous waste cleanup costs, and any agreements with its insurer regarding payment of those costs, are not relevant to the issues raised in this lawsuit. Morrison further argues that any agreements and claims between Morrison and its insurers, including a "Settlement Agreement and Release ('Settlement Agreement') between Morrison and a third-party not in this lawsuit," are confidential, and therefore discovery of this information should not be permitted. Filing No. 190, at CM/ECF pp. 2-4.

Dravo claims the information requested is relevant to the issue of damages because Morrison has submitted recovery and remediation costs to its insurer for

payment, and also seeks to recover those costs from Dravo in this litigation. Dravo argues:

> Morrison is seeking to recover costs at the FAR-MAR-CO Subsite, and documents between Morrison and its insurer(s), including the payment of all or part of the costs incurred by Morrison at the FAR-MAR-CO Subsite are clearly relevant or could reasonably lead to discovery of admissible evidence related to the validity of its cost claim. Morrison's claim for cost recovery cannot be properly assessed without full knowledge of Plaintiff's costs, and Morrison's possible reimbursement by its insurers is certainly relevant. . . . Without the requested documents, Dravo cannot adequately assess the costs of remediation that remain unpaid.

Filing No. 202, ¶¶ 4, 5. Dravo has submitted evidence that legal fees for the "Morrison Environmental Defense" were paid by Traveler's Casualty & Surety Company pursuant to the terms of a settlement agreement between Morrison and Travelers, (filing no. 203-2, at CM/ECF p. 2), and some of Morrison's cost for the Well-D remediation system have been presented to an insurer for payment. Filing No. 203-3, at CM/ECF p. 5.

During the course of a deposition of Kenneth Morrison, Dravo's counsel intended to ask whether Morrison's insurance carrier agreed to pay for any of the costs incurred in connection with the Well-D system; the amount of the costs the insurer has agreed to pay, and whether any of those costs are part of Morrison's claim against Dravo. Filing No. 202-3, at CM/ECF p. 6-7. Counsel for Morrison stated the witness would not be permitted to answer these areas of inquiry because Morrison has "an agreement with an insurance company, but there are provisions of the agreement that are confidential and cannot be disclosed and this is pursuant to order of the Court there in Hastings." Filing No. 203-3, at CM/ECF p. 5. As explained by Morrison's counsel:

> [T]here are confidentiality provisions associated with this settlement that bear directly on the questions that you've posed that you would be interested in having responses to. Those provisions preclude our client -- as of the agreement preclude our client from responding to those questions and I don't feel I have any choice under the circumstances except to instruct him not to answer those questions if you should decide to pose them, all three of them.

Filing No. 203-3, at CM/ECF p. 7.

Dravo claims the amount actually paid by Morrison's insurer for environmental cleanup, rather than Morrison itself, is relevant or could lead to the discovery of relevant information regarding the validity of Morrison's cost claims. The court disagrees. As between an insured and a third party, the fact that an insurer paid or refused to pay a bill does not tend to prove whether the bill is valid. Moreover, the fact that Morrison may have first-party insurance coverage for all or part of the response costs does not limit Morrison's damage claim against Dravo. Under the collateral source rule, benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. Gill v. Maciejewski, 546 F.3d 557, 564 (8th Cir. 2008)(applying federal common law); Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc., 232 Neb. 763, 767, 443 N.W.2d 872, 875 (1989)(applying Nebraska law). Dravo has also failed to explain how Morrison's method of accounting with respect to its environmental response costs is relevant to Dravo's claims and defenses.

However, to the extent Dravo seeks discovery to confirm there are no inconsistencies or irregularities in the billings or costs Morrison seeks to recover from Dravo compared to those it submitted to its insurer, the information may be relevant or could lead to the discovery relevant information. Further, Dravo has filed a counterclaim seeking a judgment of contribution against Morrison for payment of the

environmental response costs at issue. Filing No. 63. Therefore, to the extent Dravo's discovery seeks production of "any insurance agreement under which any person carrying on an insurance business may be liable . . .to indemnify or reimburse for payments made [by Morrison] to satisfy [Dravo's] judgment" against Morrison, (Fed. R. Civ. P. 26(a)(1)(D)), the discovery request is not improper.

To summarize, as to the amounts paid by any insurer on Morrison's behalf pursuant to any insurance agreements, Dravo has failed to show such information is relevant to the subject matter of the lawsuit and necessary to prepare the case for trial. Morrison will, however, be required to disclose the claim documents, along with copies of supporting billings, it has submitted to an insurer(s) for payment or reimbursement of recovery and remediation costs incurred in the cleanup of hazardous substances at the FAR-MAR-CO Subsite. As to any insurance agreements, the record includes a minimal showing that a confidential agreement exists between Morrison and an insurer. However, Morrison has not submitted the purportedly confidential insurance agreement or information to the court for *in camera* review. If Morrison believes release of the insurance agreement will violate a confidentiality provision, it must submit the agreement to the court for *in camera* review and a final determination concerning whether release is necessary and appropriate in this litigation, and if so, the terms of such release. In the absence of motion for *in camera* review, Morrison will also be required to disclose any insurance agreements which may provide coverage to Morrison for any contribution or indemnification award it may owe to Dravo.

### Morrison's Motions to Quash: Harvey Cohen and Steven P. Larson Subpoenas
(Filing Nos. 195 & 198)

Dravo subpoenaed Morrison's expert witnesses, Harvey Cohen and Steven P. Larson, for depositions to be held on July 23, 2009 and July 24, 2009, respectively. Although Morrison moved to quash the depositions, (filing nos. 195 & 198), the

depositions were conducted by agreement of the parties, with any dispute remaining thereafter to be submitted to the court following the depositions.

Dravo has filed a post-deposition response to Morrison's motions to quash, and claims it remains entitled to receive two types of documents from Larson and Cohen; specifically,

- Requests for Modeling Files; that is, "Any report, document, file or other written or electronic communication relating to the modeling by Messers. Larson and/or Cohen of the fate and transport of contaminants in the Hastings Groundwater Contamination Site," and "[a]ny document showing the capture pattern for Well D;" and

- Any and all documents, including invoices and billing records, [regarding] the amount of time worked and money generated by [Larson and Cohen] for services rendered to Plaintiff Morrison.

Filing Nos. 197-1, at CM/ECF p. 6; 200-1, at CM/ECF p. 6.

As to the modeling files, Morrison's motions to quash state Larson has provided consulting services to Morrison for over twenty years, and therefore the documents responsive to Dravo's requests for modeling files from Larson and Cohen are voluminous. Morrison also claims the requests are unduly broad in time and scope, and are irrelevant because the experts did not perform modeling to create their expert reports for this litigation. Filing nos. 195 & 198.

At his deposition, Larson explained he performed computer modeling regarding the environmental issues raised in this litigation to prepare a 2006 feasability study report submitted to the EPA by Morrison. Filing no. 208-2, at CM/ECF pp. 16-20. Larson testified that although he did no modeling to prepare his expert report for this case, some of the information underlying the opinions in his

expert report, (e.g., "an estimated hydraulic conductivity of 180 feet per day"), was derived from the modeling performed for the 2006 feasability study. Larson testified "it probably wouldn't take very long at all" to create an electronic copy of the underlying modeling files used for 2006 feasability study report. Filing no. 208-2, at CM/ECF p. 20.

Dravo is entitled to review the information Morrison's experts relied upon to formulate their opinions. Irrespective of whether the computer model was created for this litigation or for Morrison's submission to the EPA, Morrison's experts constructed computer models and based their opinions for this litigation on information ascertained from those models. As requested in its subpoena of Morrison's experts, Dravo is entitled to the reports, documents, files or other written electronic communication relating to modeling performed by Larson or Cohen to determine the fate and transport of contaminants in the Hastings Groundwater Contamination Site, and the capture pattern for Well D.

Dravo's subpoena also requested production of all documents reflecting the amount of time worked and money received by Larson and Cohen for work performed for Morrison. Larson and Cohen interpreted this request as asking for the amount billed to prepare their expert report and rebuttal report for this litigation, and provided this information to Dravo. However, Dravo actually seeks the total amount of money these experts have received from Morrison since beginning to perform Morrison's work. Larson has performed work for Morrison for at least twenty years.

Dravo claims the information requested is relevant for impeachment purposes. While an expert's financial gain may be relevant to show bias in favor of his or her client, Dravo's request is excessive. Requesting Larson and Cohen to disclose all billings and invoices sent to, and all amounts received from Morrison, a client of S.S. Papadopulos & Associates, Inc., for over twenty years, is unreasonable. Billings and invoices, in and of themselves, do not prove Dravo was paid or profited from

Morrison's business.  As to any potential bias derived from financial gain, the gross amounts actually received by Morrison's experts means little or nothing absent consideration of the expenses associated with performing the work, or how the actual profit from this client compares to the firm's total income.  Dravo is not entitled to production of "[a]ny and all documents, including invoices and billing records, [reflecting] the amount of time worked and money generated by [Larson and Cohen] for services rendered to Plaintiff Morrison."  Behler v. Hanlon, 199 F.R.D. 553, 562 (D. Md. 2001).

For all the foregoing reasons,

IT IS ORDERED:

1) Morrison's Motions to Compel, (filing nos. 138 & 141), are denied as moot.

2) As to Morrison's Motion for Protective Order, (filing no. 189):

   a. On or before August 20, 2009, Morrison shall serve on Dravo copies of the claim documents, along with copies of supporting billings, Morrison has submitted to an insurer(s) for payment or reimbursement of recovery and remediation costs incurred in the cleanup of hazardous substances at the FAR-MAR-CO Subsite.

   b. As to any insurance agreements existing between Morrison and an insurer under which Morrison may seek indemnification or reimbursement for payments made by Morrison to satisfy a judgment in favor of Dravo:

      i. If Morrison contends release of the insurance agreement will violate a confidentiality clause or court order, it shall submit the agreement and, as necessary, the relevant court order to the court for *in camera* review on or before August 20, 2009;

  ii. As to any insurance agreements not timely submitted to the court for *in camera* review which may provide coverage to Morrison for any contribution or indemnification award Morrison may be adjudged to owe Dravo, Morrison shall serve a copy of such agreement(s) on Dravo on or before August 20, 2009.

 c. In all other respects, Morrison's Motion for Protective Order, (filing no. 189), is granted.

3) Regarding Morrison's Motions to Quash the deposition subpoenas served on Harvey Cohen and Steven P. Larson, (filing nos. 195 & 198),

 a. Dravo's request by subpoena for production of "Any report, document, file or other written or electronic communication relating to the modeling by Messers. Larson and/or Cohen of the fate and transport of contaminants in the Hastings Groundwater Contamination Site," and "[a]ny document showing the capture pattern for Well D," is granted, and Morrison shall serve this information on Dravo on or before August 20, 2009.

 b. Dravo's request by subpoena for production of "[a]ny and all documents, including invoices and billing records, [reflecting] the amount of time worked and money generated by [Larson and Cohen] for services rendered to Plaintiff Morrison," is denied.

 c. All remaining issues raised by Morrison's motions to quash and for protective order, (filing nos. 195 & 198), are denied as moot.

4) Regarding the discovery motions related to discovery of Dravo's financial status and any available insurance coverage, (filing nos. 216 & 245):

 a. Dravo's brief, (filing no. 246), in support of its motion for protective order is deemed Dravos' response to Morrison's filing 216. No reply shall be filed regarding filing 216.

    b.    Morrison and Dravo shall confer regarding resolution of Morrison's motion for responses to discovery out of time, (filing no. 216), and Dravo's motion for protective order (filing no. 245), and attempt in good faith to resolve these motions without further court intervention.

    c.    Dravo and Morrison shall either file a joint statement advising the court that filings 216 and 245 are resolved by August 17, 2009, or Morrison shall file its brief in response to Dravo's motion for protective order (filing no. 245) by August 20, 2009.

    d.    Pending either an agreement between Dravo and Morrison to the contrary, or a court ruling on Dravo's motion for protective order, (filing no. 245), Morrison's 30(b)(6) deposition noticed to begin at 9:00 a.m. on August 11, 2009, is stayed.

DATED this 10th day of August, 2009.

BY THE COURT:

*Richard G. Kopf*
United States District Judge