IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MORRISON ENTERPRISES, LLC, and<br>CITY OF HASTINGS, Nebraska, | ) | |
| | ) | |
| Plaintiffs, | ) | 4:08CV3142 |
| | ) | |
| v. | ) | |
| | ) | |
| DRAVO CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTIONS FOR SUMMARY
JUDGMENT ON COUNTS I, II, III, AND IV OF DRAVO CORPORATION'S
COUNTERCLAIMS

Now before me is "City's Motion for Summary Judgment on Counts I, II, III, and IV of

Dravo Corporation's Amended Counterclaims," filing 171, and "Morrison Enterprises . . . LLC's

Motion for Summary Judgment on Counts I Through IV of Dravo Corporation's Counterclaims,"

filing 175.  My analysis of the plaintiffs' motions follows.

## I.   BACKGROUND

The City of Hastings, Nebraska (Hastings) is a municipal corporation organized under the

laws of the State of Nebraska.  (Hastings' Br., filing 173, Statement of Material Facts (Facts) ¶

1.)  Morrison Enterprises, LLC (Morrison) is a Nebraska limited liability company with its

principal place of business in Hastings, Nebraska.  (Id. ¶ 2.)  Dravo Corporation (Dravo) is a

Delaware corporation with its corporate headquarters located in Pennsylvania.  (Id. ¶ 3.)

The record indicates that from the 1940's until 1965, a company called Hastings Air

Conditioning owned and operated a manufacturing facility at 108 South Colorado Avenue in

Hastings.  (Morrison's Br., filing 176, (Statement of Uncontroverted Material Facts (Facts) ¶ 6.)

In 1965, Hastings Air Conditioning merged into Hastings Industries, Inc., and Hastings

Industries, Inc. then owned and operated the facility.  (Id. ¶ 7.)  Sometime in 1968, Dravo

1

purchased Hastings Industries, Inc., through a stock acquisition.  (Id. ¶ 8.)  Hastings Industries, Inc., continued to operate the 108 South Colorado Avenue facility until 1975.  (Id. ¶ 9.)  In 1975, Hastings Industries, Inc., was dissolved, and Dravo operated the facility until 1982.  (Id. ¶ 11.)  There is no dispute that Dravo is the legal successor in interest to Hastings Industries, Inc.  (Id. ¶ 12.)

From 1968 to 1971, vapor degreasing operations were conducted at the 108 South Colorado Avenue facility using trichloroethylene (TCE).  (Morrison's Br., filing 176, Facts ¶¶ 10, 20.)  TCE was discharged into sewer systems connected to the facility, and it escaped out of the sewer lines into the surrounding soil.  (Id. ¶¶ 21-22.)  The TCE then moved through the soil and entered the groundwater.  (Id. ¶ 23.)

In 1983, Hastings reactivated Municipal Well 18, located approximately one-half mile east of the 108 South Colorado Avenue facility.  (Morrison's Br., filing 176, Facts ¶ 25.)  After complaints were made about the smell and taste of the water drawn from the well, the State of Nebraska tested the groundwater and found it to contain TCE, trichloroethane (TCA), and tetrachloroethene (PCE).[1]  (Id. ¶ 26.)  The EPA then designated the area as the Hastings Groundwater Contamination Site (HGWCS), and on June 10, 1986, it added the HGWCS to the National Priorities list.  (Id. ¶ 27.)

In 1986, the EPA notified a number of entities, including Morrison and Dravo, that the contamination at the HGWCS had originated from several source areas.  (Morrison's Br., filing 176, Facts ¶ 28.)  These source areas were designated as follows: (1) the FAR-MAR-CO Subsite; (2) the North Landfill Subsite; (3) the South Landfill Subsite; (4) the Second Street Subsite; (5) the Colorado Avenue Subsite; (6) the Well No. 3 Subsite; and (7) the Hastings East Industrial Park (former Blaine Naval Ammunition Depot) Subsite.  (Id.)  Morrison was identified by the EPA as a potentially responsible party at the FAR-MAR-CO Subsite, where there have been releases of ethylene dibromide (EDB) and carbon tetrachloride (CT).  (Id. ¶¶ 29-30.)  Morrison and Dravo dispute whether there have also been releases of TCE at the FAR-MAR-CO Subsite.

---

[1]In its brief, Morrison does not identify the name of chemical that it abbreviates using the letters "PCE."  However, the evidence submitted by Morrison abbreviates tetrachloroethene using those letters.  (See Morrison's Index, filing 179, Ex. M, at R26MOR001848.)

(Compare id. ¶¶ 31-32 with Dravo's Response Br., Response to Morrison's Statement of
Material Facts (Facts) ¶¶ 31-32.)  Dravo was identified as a potentially responsible party at the
Colorado Avenue Subsite, where there have been releases of TCE, TCA, and PCE.  (Morrison's
Br., filing 176, Facts ¶ 33.)  Hastings and Dravo are potentially responsible parties at the North
Landfill Subsite.  (E.g., Am. Compl., filing 53, ¶ 26; Answer, filing 63, ¶ 26.)

On October 1, 1992, the EPA entered into an Administrative Order on Consent (AOC) in
the Matter of the North Landfill Subsite, Hastings Ground Water Contamination Site, Docket No.
VII-92-F-0028.  (Hastings' Br., filing 173, Facts ¶ 16.)  Hastings was one of the respondents
participating in the 1992 AOC.  (Hastings' Index, filing 172, Ex. H at CITY 000111.)  The AOC
states, "The parties acknowledge that under CERCLA [(i.e., the Comprehensive Environmental
Response, Compensation and Liability Act of 1980)], as amended, Respondent shall not be liable
for claims for contribution regarding matters addressed in this Consent Order."  (Id. at CITY
000145.)  It also states, "In entering into this Consent Order, the objectives of EPA and the
Respondents are to design the interim remedial action for the source control and ground water
operable units at the North Landfill Subsite and for EPA to recover oversight and other response
costs incurred by EPA with respect to said design."  (Id. at CITY 000115.)

In 1996, Morrison entered into an AOC with the EPA that required Morrison "to conduct
[a] removal action . . . to abate an imminent and substantial endangerment to the public health,
welfare or the environment that may be presented by the . . . release of hazardous substances at or
from the FAR-MAR-CO subsite."  (Morrison's Index, filing 179, Exhibit T at R26MOR003829.)
More specifically, Morrison was required to design, install, and operate "a ground water
extraction system," known as the Well D System, that would be capable of pumping extracted
groundwater to an industrial facility for disposal.  (Id. at R26MOR003844; see also Morrison's
Br., filing 176, Facts ¶ 34.)  The AOC indicates that system was to address EDB, CT, and TCE
contamination in particular.  (Morrison's Index, filing 179, Exhibit T at R26MOR003832,
R26MOR003840-41.)  It is undisputed that the Well D System is capturing TCE, CT, and EDB.
(Morrison's Br., filing 176, Facts ¶ 38.)  There is disagreement between Morrison and Dravo
about the sources of this TCE and about the proportion of the TCE emanating from the Colorado
Avenue Subsite that is being captured by the Well D System.

3

On August 14, 1998, the court entered a consent decree in <u>United States v. City of Hastings</u>, No. 8:98CV265 (D. Neb. Aug. 14, 1998), concerning the North Landfill Subsite. (Hastings' Br., filing 173, Facts ¶ 15.)  Hastings and Dravo were "settling defendants" that participated in the consent decree.  (<u>Id.</u>)  The consent decree states that the settling defendants "are entitled, as of the effective date of this Consent Decree, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), for matters addressed in this Consent Decree."  (<u>Id.</u> (quoting Hastings' Index, filing 172, Ex. G at 77).)  It adds that "[t]he term 'matters addressed in this Consent Decree' shall mean the Work, the Past Response Costs, and the Future Response Costs."  (<u>Id.</u> (quoting Hastings' Index, filing 172, Ex. G at 77).)

On September 27, 2001, the United States filed a civil action against Dravo and Desco Corporation (Desco) alleging that Dravo and Desco were liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), for costs incurred by the United States in response to releases and threatened releases of hazardous substances at the Colorado Avenue Subsite of the HGWCS. (Hastings' Br., filing 173, Facts ¶ 6 (citing Hastings' Index, filing 172, Ex. B at CITY 000002).) <u>See also</u> <u>United States v. Dravo Corp.</u>, No. 8:01CV500 (D. Neb. Sept. 27, 2001).  On November 26, 2001, Dravo and Desco joined Hastings as a third-party defendant in that case, seeking contribution for the response costs that the United States sought to recover from Dravo and Desco.  (Hastings Br., filing 173, Facts ¶ 6 (citing Hastings' Index, filing 172, Ex. B at CITY 000002).)  On or about January 24, 2006, Dravo, Desco, and Hastings entered into a Settlement and Release Agreement to resolve certain claims and potential claims among them, including the claims asserted by Dravo in the third-party complaint against Hastings.  (<u>Id.</u> ¶ 7.)  In a memorandum and order dated May 26, 2006, the court approved the Settlement and Release Agreement.  (<u>Id.</u> ¶ 8.)  The memorandum and order states,

> Any and all future claims by any entity against [Hastings], including but not limited to claims for contribution or response costs pursuant to 42 U.S.C. § 9613(f)(2) or other applicable federal or state law, arising out of or related to the release or threatened release of hazardous substances or contaminants at or associated with the Subsite at issue in this litigation are barred.

(Id. (quoting Hastings' Index, filing 172, Ex. C at 3).)  An amended order entered on May 31,

2006, included this same language.  (Id. ¶ 9 (quoting Hastings' Index, filing 172, Ex. D at 3).)

On October 4, 2004, while United States v. Dravo Corp. was pending, the EPA entered

into an AOC in the Matter of North Landfill Subsite-Operable Unit OU2 Hastings Ground Water

Contamination Site, CERCLA Docket No. 07-2004-0183.  (Hastings' Br., filing 173, Facts ¶ 13.)

Hastings and Dravo were respondents that participated in the AOC.  (Hastings' Index, filing 172,

Ex. F at CITY 000278.)  The AOC states,

> The Parties agree that Respondents . . . are entitled, as of the Effective
> Date, to protection from contribution actions or claims as provided by Sections
> 113(f)(2) and 122(h)(4) of CERCLA, 42 U.S.C. §§ 9613(f)(2) and 9622(h)(4), for
> "matters addressed" in this Order.  The "matters addressed" in this Order are the
> Work, Interim Response Costs, and Future Response Costs.

(Hastings' Br., filing 173, Facts ¶ 13 (quoting Hastings' Index, filing 172, Ex. F at CITY

000314).)  The SOW for the 2004 AOC states,

> This Statement of Work . . . outlines the activities to be conducted by
> Respondents to this Administrative Order on Consent for the completion of a
> Feasibility Study ("FS") for OU2 of the North Landfill Subsite, Hastings,
> Nebraska. . . .
>
> The purpose of this FS is to develop and evaluate potential remedial
> alternatives for the final Subsite remedial action. The remedial alternatives are
> alternatives that would, when implemented, prevent, mitigate or otherwise
> respond to or remedy any release or threatened release of hazardous substances,
> pollutants, or contaminants at or from the ground water operable unit OU2 at
> levels that exceed the maximum contaminant level established under the Safe
> Drinking Water Act.

(Hastings' Index, filing 172, Ex. F at CITY 000323.)

On November 15, 2007, the court entered an "RD/RA Consent Decree" in United States

v. Hastings, No. 8:07CV365 (D. Neb. Nov. 15, 2007), concerning the North Landfill Subsite of

the HGWCS.  (Hastings' Br., filing 173, Facts ¶ 10.)  Hastings was one of the settling defendants

that participated in the consent decree.  (Id.)  The consent decree states,

> The Parties agree, and by entering this Consent Decree this Court finds,
> that the Settling Defendants and the Settling Federal Agency are entitled, as of the
> Effective Date, to protection from contribution actions or claims as provided by
> CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2)[,] for matters addressed in

this Consent Decree.  Matters addressed means the Work required by this Consent
Decree and the Past and Future Response Costs, as defined herein.

(Id. (quoting Hastings' Index, filing 172, Ex. E at 41).)  The Statement of Work (SOW) for the

2007 Consent Decree states,

> The Subsite has been divided into two operable units: (1) OU 10 addresses
> the soil at the subsite; and (2) OU 2 addresses the ground water associated with
> the Subsite.  The Remedial Action to address the contaminated ground water is
> the subject of the CD [Consent Decree] and this SOW and is expected to be the
> final response action selected for the Subsite.
>
> . . . .
>
> Settling Defendants shall coordinate by periodic oral or written
> communication with responsible parties at the FAR-MAR-CO Subsite, and with
> officials at Chief Ethanol to ensure the continued operation of Well D (presently
> operated by the City of Hastings and others), Wells IN-05 and IN-11 (presently
> operated by Chief Ethanol), and Wells A, B, and C (presently operated by the City
> of Hastings at the Whelan Energy Center [WEC]).  These wells, depicted in
> Appendix C to the CD, provide hydraulic containment of the impacted ground
> water plume associated with the Subsite to contain the migration of volatile
> organic compounds (VOCs) exceeding target concentrations in the ground water.
> The cessation of operation or impairment of any of these wells will require a
> modification to this SOW, consistent with Paragraph 14 of the CD.

(Hastings' Index, filing 172, Ex. E, Appendix B at 2, 4-5.)

On February 24, 2009, Morrison and Hastings filed an eight-count amended complaint

against Dravo Corporation (Dravo).  (See generally filing 53.)  Counts I-III are brought by the

plaintiffs jointly, and Counts IV-VIII are brought solely by Hastings.  Count I alleges that the

plaintiffs are entitled to a "recovery of response costs pursuant to 42 U.S.C. § 9607(a)."  (See

Am. Compl., filing 53, ¶¶ 46-67.)  Count II alleges that the plaintiffs are entitled to "a declaratory

judgment . . . for response costs incurred, and future response costs or damages to be incurred, as

a result of the release or threatened release of hazardous substances."  (Id. ¶ 69 (citing, inter alia,

42 U.S.C. § 9613(g)(2)).)  Count III, titled "Non-Contractual Indemnity," alleges that Dravo

should bear "the costs associated with the remediation of TCE contamination emanating from the

Colorado Avenue Subsite."  (Id. ¶ 80.)  Count IV, titled "Negligence," alleges that Dravo

breached its duty to Hastings "to operate and maintain its facility in such a manner as to prevent

6

soil and groundwater contamination," which caused Hastings to suffer damages.  (See id. ¶¶ 81-91.)  Count V, titled "Private Nuisance," alleges that Hastings "has been unreasonably deprived of its use and enjoyment of . . . property housing certain water system infrastructure" due to the nuisance created by "the ongoing migration of hazardous substances from Dravo's Colorado Avenue facility."  (See id. ¶¶ 96, 98.)  Count VI, titled "Public Nuisance," alleges that "Dravo's action in contaminating the soil and groundwater in and around the City of Hastings is a public nuisance."  (See id. ¶ 103 (citing Neb. Rev. Stat. § 81-1506).)  Count VII, labeled "Trespass," alleges that contaminants from the Colorado Avenue Subsite that exist in the city's soil and groundwater interfere with Hastings' "exclusive right of possession in the property in or upon which the City's wells and water mains are located," and that Dravo's "failure to adequately respond to the contamination constitutes a knowing and willful maintenance of the trespass on the City's property."  (See id. ¶¶ 107, 109-110.)  Count VIII, titled "Breach of Contract," alleges that counterclaims filed by Dravo in response to the plaintiffs' original complaint breach "the covenant not to sue, the release, and the discharge provisions" of a January 24, 2006, Settlement Agreement and Release and a May 26, 2006, court order.  (See id. ¶¶ 113, 118, 119-120.)

On March 6, 2009, Dravo answered the amended complaint and filed four counterclaims against the plaintiffs.  (See filing 63.)  Counterclaim I alleges, "In the event Dravo is found liable under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)[,] for plaintiffs' past or present response costs, Dravo is entitled to contribution from [p]laintiffs pursuant to § 113(f) of CERCLA, 42 U.S.C. § 96113(f)(1) [sic], and a set-off for the contamination caused by others who are responsible for the contamination of soil and ground water in Hastings."  (See Am. Counterclaims, filing 63, at 29 ¶ 2.)  Counterclaim II alleges, "In the event Dravo is found liable for Morrison's past or future response costs pursuant to Count III of the Complaint (contractual indemnity), Dravo is entitled to indemnification from the City."  (Id. at 30 ¶ 5.)[2]  Counterclaim III alleges, "In the event Dravo is found liable for the damages to the City's water system pursuant

_____

[2]Because Count III of the complaint is entitled "Non-contractual Indemnity," I suspect that Counterclaim II means to allege, "In the event Dravo is found liable for Morrison's past or future response costs pursuant to Count III of the Complaint (non-contractual indemnity), Dravo is entitled to indemnification from the City."

7

to Counts IV through VII, Dravo is entitled to contribution from Morrison and the City, as well as a set-off for the contamination caused by others who are responsible for the contamination of the soil and ground water in Hastings." (Id. at 30 ¶ 8.)  Counterclaim IV alleges that Dravo and other PRPs at the North Landfill subsite have borne an excessive share of the costs of the Well D System and that "Dravo is entitled to reimbursement from the City and Morrison for costs already paid and a declaration from the Court as to its responsibility for any past and future costs of the operation of Well D for which it may be responsible as a PRP at the North Landfill Subsite." (Id. at 31 ¶ 12.)

The deposition of Dravo's corporate representative, Lisa Potts, was taken on July 1, 2009. (See Dravo's Index, filing 244, Ex. B.)  Ms. Potts was designated to testify for Dravo about "topic 4," "which related to the factual basis for Count IV of Dravo's amended counterclaim." (Hastings' Br., filing 173, Facts ¶ 19.)  During her deposition, Ms. Potts was asked the following questions, and she provided the following answers:

> Q.    Do you know what share – what costs are being borne by the North Landfill PRP, are there any facts that support that portion of 4-A that you can tell me about?
>
> A.    Again, my understanding from Mr. Demase is that the North Lanfill is covering two-thirds of the cost and Morrison is covering one-third of the cost.
>
> Q.    I want to know what those costs are.  Do you know what they are?
>
> A.    No, I do not.

(Hastings' Index, filing 172, Ex. I at 34:2-12.)  She added that "Dravo has apparently paid part of the two-thirds share for the final remedy for the North Landfill," but she was "not prepared to testify to" the amount paid by Dravo.  (Id. at 36:12-16.)  She also stated that she had no answer to the question, "what is the basis for saying that the City owes some reimbursement to Dravo in four a?" (Id. at 90:25-91:4.)  She stated that Dravo would rely on its expert witness to provide facts supporting its allegation that Dravo has paid an unfair share of the costs and is entitled to reimbursement from Morrison.  (Dravo's Index, filing 244, Ex. B at 36:23-37:14, 38:19-25.)

On July 15, 2009, both Hastings and Morrison filed motions for summary judgment on all

four of Dravo's counterclaims.  (See filings 171 and 175.)

## II.   STANDARD OF REVIEW

A motion for summary judgment shall be granted by the court "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A "material" fact is one that "might affect the outcome of the suit under the governing law," and a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the evidence is to be taken in the light most favorable to the nonmoving party.  Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970).  If the moving party meets the initial burden of establishing the nonexistence of a genuine issue, then the burden shifts to the nonmoving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  The nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," Anderson, 477 U.S. at 257, and "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial," id. at 256 (citing Fed. R. Civ. P. 56(e)).

## III.   ANALYSIS

Dravo argues that Counterclaims I, II, and III "are basically defensive," and hinge on findings that Dravo is liable to the plaintiffs under various counts of the amended complaint. (See Dravo's Response Br., filing 243, at 6.)  First, Dravo states that Counterclaim I "is for contribution from Plaintiffs, and will come into play if Dravo is found liable to Plaintiffs under § 107 of CERCLA."  (Id.)  I have found, however, that Dravo is entitled to summary judgment on Hastings' claim that Dravo is liable to Hastings under CERCLA § 107(a) for damages to Hastings' water supply system, (see Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the City of Hastings' Claims Related to its Water Supply System, Part III.A), and on Hastings' and Morrison's claims that Dravo is liable to Hastings and/or Morrison under

9

CERCLA § 107(a) for claims associated with the Well D System, (see Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the Plaintiffs' Claims Related to the Well D System, Part III.A).  It seems to me that these findings dispose of all of the plaintiffs' claims against Dravo based on CERCLA § 107.  It seems to me too that, in light of these findings, Dravo's Counterclaim I is now moot.  I shall deny Hastings' and Morrison's motions for summary judgment on Counterclaim I for that reason.

Dravo states that Counterclaim II "is a claim for indemnification against the City in the event Morrison is successful in obtaining a judgment for its response costs based on its common law non-contractual indemnity claim."  (Dravo's Response Br., filing 243, at 6.)  I have found that Dravo is entitled to summary judgment on Morrison's non-contractual indemnity claim.  (See Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the Plaintiffs' Claims Related to the Well D System, Part III.B.)  Thus, Counterclaim II appears to be moot, and I shall deny the plaintiffs' motions for summary judgment on Counterclaim II for that reason.[3]

Dravo states that Counterclaim III "seeks contribution and a set off against both parties for the common law claims of the City of Hastings for alleged damages to the City's water delivery system and other parts of the water system facilities of the City of Hastings."  (Dravo's Response Br., filing 243, at 6.)  Counterclaim III specifies that its viability is contingent on a finding that Dravo is liable to Hastings under Counts IV, V, VI, or VII of the amended complaint.  (See Am. Counterclaims, filing 63, at 30 ¶ 8.)  I have found, however, that Dravo is entitled to summary judgment on Counts IV-VII of the amended complaint.  (See Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the City of Hastings' Claims Related to its Water Supply System, Part III.B-D.)  Counterclaim III is therefore moot, and I shall deny the plaintiffs' motion for summary judgment on Counterclaim III for that reason.

Counterclaim IV is unaffected by my rulings on Dravo's motions for summary judgment. I shall therefore proceed to determine whether Hastings and Morrison are entitled to summary

---

[3]I note in passing that I denied Dravo's motion for summary judgment on Hastings' non-contractual indemnity claim.  (See Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the Plaintiffs' Claims Related to the Well D System, Part III.B.)  However, because Counterclaim II is contingent on Morrison's–not Hastings'–success on its non-contractual indemnity claim, I find that Counterclaim II is moot.

judgment on this counterclaim.

As I noted above, Counterclaim IV alleges that Dravo and other PRPs at the North Landfill subsite have borne an excessive share of the costs of the Well D System and that "Dravo is entitled to reimbursement from the City and Morrison for costs already paid and a declaration from the Court as to its responsibility for any past and future costs of the operation of Well D for which it may be responsible as a PRP at the North Landfill Subsite." (See Am. Counterclaims, filing 63, at 31 ¶ 12.) Morrison and Hastings argue that they are each entitled to summary judgment on this counterclaim for different reasons. I shall consider each of the plaintiffs' arguments in turn.

## A. Morrison's Motion for Summary Judgment on Counterclaim IV

Morrison argues that it is entitled to summary judgment on Counterclaim IV because "Dravo cannot prove the element of common liability." (Morrison's Br., filing 176, at 15.) There is no dispute that Morrison and Dravo are each responsible for releases of hazardous substances that have been extracted by Well D. Morrison submits, however, that there is no common liability between Morrison and Dravo because Morrison is not liable for any release of TCE. (Id. at 16.) As I noted in Part I above, however, there is a dispute as to whether Morrison is liable for releases of TCE. Furthermore, even if I were to assume that Morrison is not responsible for releases of TCE, it does not follow that Dravo's Counterclaim IV must fail. Indeed, Morrison has submitted no law in support of its claim that Dravo can seek neither reimbursement nor a declaration concerning its obligation to pay Well D operating costs unless both Dravo and Morrison are responsible for releases of the very same contaminant. Moreover, Morrison appears to concede in its reply brief that it is appropriate to "apportion liability" between Morrison and Dravo. (See Morrison's Reply Br., filing 266, at CM/ECF page 19 of 22.)[4] Morrison's motion for summary judgment on Counterclaim IV will be denied.

## B. Hastings' Motion for Summary Judgment on Counterclaim IV

Hastings argues, inter alia, that the 2007 Consent Decree entered in United States v. Hastings, No. 8:07CV365 (D. Neb. Nov. 15, 2007), bars "contribution actions and claims against

---

[4]Because Morrison's reply brief lacks page numbers, I refer here to the page number appearing in the header that may be added to Morrison's brief using the court's CM/ECF system.

the City as provided in CERCLA § 113(f)(2), 42 U.S.C. § 9613(f)(2), with respect to the North Landfill Subsite." I agree.

CERCLA § 113(f)(2) states, "A person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution regarding matters addressed in the settlement." 42 U.S.C. § 9613(f)(2). As noted above, Hastings was a "settling defendant" in the consent decree in United States v. Hastings, No. 8:07CV365 (D. Neb. Nov. 15, 2007), and the consent decree states specifically that "the Settling Defendants . . . are entitled . . . to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2) . . . for matters addressed in [the] Consent Decree." (Hastings' Index, filing 172, Ex. E at 41.) It adds that "Matters addressed means the Work required by this Consent Decree and the Past and Future Response Costs, as defined herein." (Id.) The term "Work" is defined as "all activities Settling Defendants are required to perform under this Consent Decree, including all modifications required pursuant to Paragraph 14, except those required by Section XXV (Retention of Records)." (Id. at 7. See also id. ("Settling Defendants shall finance and perform the Work in accordance with this Consent Decree, the ROD, the SOW, and all Work Plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendants and approved by EPA pursuant to this Consent Decree." (Emphasis added)).) More specifically, the consent decree states,

> The Settling Defendants shall implement the Remedial Action and O&M until the Performance Standards are achieved. Performance Standards shall be deemed to have been achieved on the earlier of (a) September 30, 2017 . . . or (b) the date Settling Defendants can show that MCLs have been achieved for the COCs consistently for the OU 2 plume for at least one year."

(Id. at 13.)[5] The SOW describes the Remedial Action that the settling defendants were required

---

[5]"O&M," or "Operation and Maintenance," means "all activities required to maintain the effectiveness of the Remedial Action for the final remedial action for OU 2, as required under the Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree and Statement of Work (SOW)." (Hastings' Index, filing 172, Ex. E at 5.) "MCLs," or "Maximum Contaminant Levels," means "the levels established under the Safe Drinking Water Act, 42 U.S.C. § 300g-1, for contaminants present in public drinking water systems." (Id.) "COCs," or "Contaminants of Concern," means "trichloroethene [i.e., TCE], Cis-1, 2-

to implement to meet the performance standards for the North Landfill Subsite of the HGWCS. (Hastings' Index, filing 172, Ex. E, Appendix B, at 1, 3.)  According to the SOW, the Remedial Action incorporates the use of "hydraulic containment using vertical extraction wells," including Well D.  (See id. at 4-5.)  As I noted above, the SOW specifically requires Hastings to coordinate with responsible parties at the FAR-MAR-CO Subsite to ensure the continued operation of Well D, and cessation of the well's operation would require a modification of the SOW.  (Id.)

In short, Hastings has resolved its liability to the United States in a consent decree that specifically provides protection to Hastings against claims for contribution for matters addressed in the consent decree.  "Matters addressed" is a defined term that encompasses the work specified in the consent decree, and the work specified in the consent decree includes a requirement that Hastings ensure the continued operation of Well D by coordinating with the responsible parties at the FAR-MAR-CO Subsite.  Counterclaim IV–which, according to Dravo, "seeks a judicial determination of the appropriate division of [Well D] costs between the PRPs at the North Landfill Subsite and the PRPs at FAR-MAR-CO, with an adjustment for any past overpayment by Dravo," (Dravo's Response Br., filing 243, at 6-7)–states a claim that falls within the matters addressed by the consent decree, at least insofar as the claim is directed toward Hastings.  Although Counterclaim IV is not a claim for contribution per se, I agree with Hastings that allowing Counterclaim IV to proceed would result in an "end run around" the contribution protection provided under CERCLA § 113(f)(2).  (See Hastings' Br., filing 173, at 12-13 (citing, inter alia, Alcan Aluminum Corp. v. Butler Aviation-Boston, Inc., No. 3:CV-02-0562, 2003 WL 22169273 (M.D. Pa. Sept. 19, 2003); United States v. Pretty Products, Inc., 780 F. Supp. 1488, 1493-97 (S.D. Ohio 1991); United States v. Cannons Engineering Corp., 899 F.2d 79, 92-93 (1st Cir. 1990)).)  Hastings' motion for summary judgment on Counterclaim IV will be granted.

In opposition to Hastings' motion, Dravo argues that "the costs associated with the operation of Well D . . . fall outside the scope of the Work defined in the Consent Decree, and hence are also outside the scope of the contribution protection provision of the Consent Decree."

---

Dichloroethene, and vinyl chloride."  (Id.; see also Hastings' Index, filing 172, Ex. E, Appendix B, at 4.)  I note parenthetically that I take judicial notice of the fact that trichloroethene, trichloroethylene, and TCE are synonymous terms.

(Dravo's Response Br., filing 243, at 10-11.)  It adds,

> All that the PRPs are required to do under the 2007 Consent Decree is to
> coordinate with the responsible parties at FAR-MAR-CO by written or oral
> communication and with officials at Chief Ethanol to ensure that Well D . . . and
> other wells continue in operation.  In the event of cessation or impairment of
> operation of these wells, a modification to the Statement of Work for the 2007
> Consent Decree will be required.  The 2007 Consent Decree does not require the
> North Landfill PRPs to operate Well D, to pay anything toward its costs or to take
> over its operation in the event of failure by the current operators.

(Id. at 11 (citation omitted).)  It is true that the SOW does not require Hastings to pay a specific

portion of the costs to operate the Well D System; nor does it require Hastings "to take over" the

operation the system.  But the SOW states specifically that Well D was "presently operated by

the City of Hastings and others," which suggests that Hastings' involvement in the operation of

the system is more substantial than Dravo's argument implies.  (Hastings' Index, filing 172, Ex.

E, Appendix B at 5.)  Also, the consent decree states specifically that Hastings and the other

settling defendants are responsible for "Operation and Maintenance," which means "all activities

required to maintain the effectiveness of the Remedial Action . . . for OU 2, as required under the

Operation and Maintenance Plan approved or developed by EPA pursuant to this Consent Decree

and Statement of Work (SOW)."  (Hastings' Index, filing 172, Ex. E at 5.)  The Remedial Action

undoubtedly includes the Well D System.  In any event, I am persuaded that Hastings' shared

responsibility to ensure the continued operation of Well D is a "matter addressed" in the Consent

Decree, and to the extent that Counterclaim IV seeks to allocate additional responsibilities to

Hastings–for operating costs or otherwise–it is barred due to the contribution protection afforded

to Hastings under § 113(f)(2).

Furthermore, I agree with Hastings that Counterclaim IV lacks factual support.  (See

Hastings' Br., filing 173, at 17.)  When questioned during her deposition, Potts could provide no

basis for Dravo's claim that Hastings owed it reimbursement for Well D-related costs.

(Hastings' Index, filing 172, Ex. I at 90:25-91:4.)  Dravo argues that "Potts testified that Dravo

would rely on its retained expert witness to establish its claim under Count[erclaim] IV."

(Dravo's Response Br., filing 243, at 13 (citing Dravo's Index, filing 244, Ex. B at 36:23-37:14,

38:19-25).)  However, Potts testified only that her expert would prepare "information" showing

14

that the North Landfill PRPs, which include <u>both Hastings and Dravo</u>, bore an unfair share of the costs in comparison with <u>Morrison</u>.  In other words, Potts testified that the expert report would be relevant to Dravo's claim for reimbursement from Morrison, (<u>see</u> Dravo's Index, filing 244, Ex. B at 36:1-38:25), but evidently she made no claim that the report would support Dravo's claim for reimbursement from Hastings.

Dravo refers me to the affidavit of Stephen C. Smith, (<u>see</u> Dravo's Response Br., filing 243, Facts ¶ 18 (citing Dravo's Index, filing 244, Ex. C. ¶ 12)), and the expert report of William L. Goodfellow, (<u>see</u> Dravo's Response Br., filing 243, at 14 (citing Dravo's Index, filing 244, Ex. F at 14)), arguing that these documents provide a factual basis for Counterclaim IV.  The relevant portion of Smith's affidavit merely specifies costs incurred by Dravo "to clean up soil and groundwater in Hastings," and the relevant portion of Goodfellow's report states that "EDB contributes approximately 75.4 percent and TCE contributes approximately 24.6 percent to the final carcinogenic risk results" at "Monitoring Well" D.   (Dravo's Index, filing 244, Ex. C. ¶ 12; <u>id.</u>, Ex F at 14.)  Neither of these documents supports Counterclaim IV insofar as it is directed at Hastings.

For the foregoing reasons, Hastings is entitled to summary judgment on Counterclaim IV.

**IT IS ORDERED** that Morrison's motion for summary judgment on Counts I through IV of Dravo's Counterclaims, filing 175 is denied.

**IT IS FURTHER ORDERED** that Hastings' motion for summary judgment on Counts I, II, III, and IV of Dravo's Amended Counterclaims, filing 171, is granted in part, and Hastings is entitled to summary judgment on Count IV of Dravo's counterclaims.

Dated November 24, 2009.

BY THE COURT

s/ Warren K. Urbom
United States Senior District Judge

15