IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MORRISON ENTERPRISES, LLC, and<br>CITY OF HASTINGS, Nebraska,<br><br>    Plaintiffs,<br><br>  v.<br><br>DRAVO CORPORATION,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 4:08CV3142 |

MEMORANDUM AND ORDER ON PLAINTIFFS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ON LIABILITY

  Now before me is "Morrison Enterprises, LLC's Motion for Partial Summary Judgment on Liability," filing 177. The City of Hastings has joined in this motion. (See filing 187.) For the following reasons, the plaintiffs' motion will be denied.

  Both Morrison Enterprises, LLC (Morrison) and the City of Hastings (Hastings) seek a partial summary judgment in their favor on the issue of Dravo Corporation's (Dravo's) liability under section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9607(a), as amended. (See Morrison's Br., filing 178, at 1; Hastings' Mot., filing 187, at 1.) In its motion, Morrison states, "In this litigation, Morrison seeks to recover expenses it has incurred in connection with the design, construction, operation and maintenance of the Well-D System, as well as governmental oversight costs incurred in connection with the Well-D System." (Morrison's Br., filing 178, at 5.) (See also id. at 22-23 (arguing that one of the elements of Morrison's § 107(a) claim is satisfied because "[t]he costs incurred by Morrison in connection with the Well-D System were reasonable and necessary").) Hastings states that when analyzing the instant motion, I should consider the statements of facts listed on pages 7 to 14 of the "City of Hastings' Brief in Opposition to Dravo Corporation's Motion for Partial Summary Judgment on the City's Claims Related to Its Water Supply

1

System," filing 185.  (See filing 187 at 1.)  After re-examining these pages, I take it that Hastings seeks to recover under § 107(a) not only Hastings' costs associated with the Well D System (as described in Morrison's brief), but also costs associated with certain improvements that Hastings has made to its water supply system.

Dravo has filed a motion for partial summary judgment on Morrison's and Hastings' § 107(a) claims to the extent that those claims are based on costs associated with the Well D System.  (See filing 154.)  Dravo has also filed a motion for partial summary judgment on Hastings' § 107(a) claim to the extent that the claim is based on costs associated with Hastings' water supply system.  (See filing 110.)  In resolving those motions, I concluded that Dravo was entitled to summary judgment on the plaintiffs' § 107(a) claims.  (See Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the Pls.' Claims Related to the Well D System; Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the City of Hastings' Claims Related to its Water Supply System.)  It seems to me, therefore, that Morrison's and Hastings' motion for partial summary judgment on the issue of Dravo's liability under CERCLA § 107(a) is moot.  The motion will be denied for that reason.

Although its motion is now moot, Morrison raises an argument in its reply brief that merits discussion.

In "Dravo Corporation's Motion for Partial Summary Judgment on Morrison Enterprises, LLC['s] and the City of Hastings' Claims Related to the Well D System," filing 154, Dravo argued that Morrison's claims under CERCLA § 107(a) were "improper" because "PRPs who have entered into an administrative or judicially approved settlement must seek contribution under [CERCLA §] 113(f)," 42 U.S.C. § 9613(f), rather than § 107.  (Dravo's Br., filing 168, at 8.  See also id. at 9-17.)  In response to Dravo's argument, Morrison did not dispute that it was required to incur its costs related to the Well D System pursuant to a 1991 Administrative Order on Consent (AOC), a 1995 amendment to the 1991 AOC, and a 1996 AOC.  (See Morrison's Response Br., filing 248, at 27-30.)  Morrison did not dispute that the AOCs were "administrative settlements" within the meaning of CERCLA § 113(f)(3)(B); nor did Morrison dispute that it was also required to incur Well D-related costs under the terms of a consent decree entered in United States v. Morrison Enterprises, LLC, No. 8:08cv332 (D. Neb. July 29, 2008).

(See Morrison's Response Br., filing 248, at 27-30.) Instead, Morrison argued that it should be allowed to proceed under CERCLA § 107(a) because Morrison shared no common liability with Dravo for releases of TCE (which, according to Morrison, barred Morrison from suing Dravo for contribution under § 113(f)). (See Morrison's Response Br., filing 248, at 27-30.) I rejected Morrison's argument and determined that Dravo's motion for summary judgment on Morrison's § 107(a) claims for response costs associated with the Well D System should be granted. (See Mem. & Order on Dravo Corporation's Mot. for Partial Summ. J. on the Pls.' Claims Related to the Well D System, Part III.A.1.)

In its response to the instant motion, Dravo repeated its argument that Morrison cannot assert a claim under § 107(a), but is instead limited to bringing a contribution claim under § 113(f). (See Dravo's Response Br., filing 240, at 13-18.) In reply, Morrison submits new arguments (i.e., arguments that it did not submit in its brief in opposition to Dravo's motion for partial summary judgment on the plaintiffs' Well D claims). (See Morrison's Reply, filing 267, at 5-7.) I shall address these arguments here.

Morrison argues that, in the wake of the Supreme Court's decision in United States v. Atlantic Research Corp., 551 U.S. 128 (2007), "[t]he only appellate courts to consider the issue . . . have held that a party incurring response costs pursuant to an administrative consent order may assert a cost recovery action under CERCLA § 107(a)." (Morrison's Reply Br., filing 267, at 5.) In support of this argument, Morrison cites W.R. Grace & Co.-Conn. v. Zotos International, Inc., 559 F.3d 85 (2d Cir. 2009). In W.R. Grace, however, the "administrative consent order" at issue was found not to be "an administrative or judicially approved settlement" within the meaning of § 113(f), and therefore the claimant was not eligible to seek contribution under § 113(f)(3)(B). See W.R. Grace, 559 F.3d at 90-91. The court explained that the text of the consent order, "which [made] no reference to CERCLA, establishe[d] that the [New York State Department of Environmental Conservation (DEC)] settled only its state law claims against Grace, leaving open the possibility that the DEC or the EPA could, at some future point, assert CERCLA or other claims." Id. at 91.

Here, in contrast, Morrison entered into AOCs in 1991 and 1996 that clearly "resolved its liability to the United States . . . for some or all of a response action or for some or all of the costs

of such action." 42 U.S.C. § 9613(f)(3)(B). (See generally Dravo's Index, filing 157, Ex. D; Dravo's Index, filing 161, Ex. J.) The AOCs state that they were issued under the authority vested in the President of the United States under CERCLA sections 104, 106, 107, and/or 122, as delegated to the Administrator of the EPA. (See Dravo's Index, filing 157, Ex. D at 2; Dravo's Index, filing 161, Ex. J at 2.) See also 42 U.S.C. § 9622(h) (stating that "[t]he head of any department or agency with authority to undertake a response action under this chapter pursuant to the national contingency plan" has settlement authority). Morrison agreed to be bound by the AOCs and to take all actions required under the AOCs. (See Dravo's Index, filing 157, Ex. D at 2; Dravo's Index, filing 161, Ex. J at 2.) The "Statement of Purpose and Commitments" appearing in the 1996 AOC states,

> a. In entering into this Consent Order, the objectives of the EPA and Respondent are i) to reduce the concentrations of the contaminants of concern; ii) to contain the ground water plumes at the FAR-MAR-CO Subsite to the area of treatment; and iii) to resolve the claims of EPA for response costs incurred by EPA with respect to performance of the Work.
>
> b. Respondent shall finance and perform the Work in accordance with this Order, the Action Memorandum, the SOW, and all Work Plans set forth herein or developed by Respondent and approved by EPA pursuant to this Order.

(Dravo's Index, filing 161, Ex. J at 7.)[1] The 1996 AOC's "Conclusions of Law" state

---

[1] There is no dispute that the "Work" described in the 1996 AOC includes the "design, installation and operation" of the Well D System. (Dravo's Index, filing 161, Ex. J at 16; Am. Compl., filing 53, ¶ 33.)

The "Statement of Purpose" in the 1991 AOC differs from the statement appearing in the 1996 AOC. The 1991 AOC states, "In entering into this Consent Order, the objectives of the EPA and the Respondent are: (a) to determine the nature and extent of contamination and any threat to the public health, welfare, or the environment caused by the release or threatened release of hazardous substances . . . at or from the FAR-MAR-CO Subsite, by conducting a field investigation to complete a RI; (b) to evaluate alternatives for remedial action (if any) to prevent, mitigate or otherwise respond to or remedy any release or threatened release of hazardous substances . . . at or from the FAR-MAR-CO Subsite, by conducting an FS; and (c) to recover response and oversight costs incurred by EPA with respect to work performed in connection with the completion of the RI and the FS." (Dravo's Index, filing 157, Ex. D at 3-4.)

specifically that Morrison "is a 'liable party under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), and subject to this Order under Section 106(a) of CERCLA, 42 U.S.C. § 9606(a)." (Dravo's Index, filing 161, Ex. J at 12 (emphasis added).)[2] Under a heading titled "Disclaimer," the 1996 AOC states that Morrison did not admit the factual allegations or legal conclusions set forth in the AOC (including, presumably, the conclusion that Morrison is liable under § 107(a)); that Morrison's participation in the AOC cannot be used against it in proceedings brought by entities other than the United States and the EPA; and that Morrison retained the right to assert claims against other PRPs at the Subsite. (Dravo's Index, filing 161, Ex. J at 35-36.) It also states, however, that Morrison had no right to contest any of the EPA's "determinations, allegations, finding and conclusions . . . in a proceeding to enforce [Morrison's] obligations pursuant to this Order," and that Morrison agreed "not to contest the validity of the terms of this Order, or the procedures underlying or relating to it in any action brought by the United States, including the EPA, to enforce its terms." (Id. at 36.) Morrison also waived "all statutory and common law claims against EPA including, but not limited to, contribution and counterclaims relating to or arising out of conduct of the removal action," and, if Morrison were to violate the terms of the 1996 AOC, the EPA retained its rights to: 1) carry out the required actions unilaterally pursuant to CERCLA § 104; 2) bring an action under § 106(a) to enforce the AOC; 3) bring a cost recovery action under § 107(a); and 4) seek penalties under § 109. (Dravo's Index, filing 161, Ex. J at 35, 36-37.)[3]

In summary, the 1991 and 1996 AOCs clearly resolved Morrison's "liability to the United States . . . for some or all of a response action or for some or all of the costs of such action." 42 U.S.C. § 9613(f)(3)(B). Disclaimers preserved Morrison's ability to seek contribution from other, non-settling parties, but there can be no doubt that Morrison's liability to the United States

---

[2]Similarly, 1991 AOC includes "Conclusions of Law and Determinations" stating, "Respondent is a liable party under Sections 104, 107 and 122 of CERCLA, 42 U.S.C. §§ 9604, 9607 and 9622." (Dravo's Index, filing 157, Ex. D at 10.)

[3]The 1991 AOC includes similarly-worded "Disclaimer" language, reservations of rights, and waivers. (See Dravo's Index, filing 157, Ex. D at 33-36.)

under § 107(a) was resolved in these AOCs.[4] Also, although it is true that the EPA reserved its right to bring a cost recovery action against Morrison under § 107(a) if Morrison failed to adhere to the terms of the AOC, it does not follow that Morrison's § 107(a) liability was not resolved by the AOC. On the contrary, Morrison agreed that it could not contest the AOCs' conclusions–which, as noted above, included a statement that Morrison was liable under § 107(a)–in an action brought by the EPA to enforce the AOCs' terms. The issue of CERCLA liability was resolved against Morrison, and the instant case is therefore plainly distinguishable from W.R. Grace & Co.-Conn. v. Zotos International, Inc., 559 F.3d 85 (2d Cir. 2009).

It is also apparent that the 1991 and 1996 AOCs, along with the consent decree entered in United States v. Morrison Enterprises, LLC, No. 8:08cv332 (D. Neb. July 29, 2008), required Morrison to incur the Well D-related costs that it now seeks to recover (at least in part) from Dravo. Morrison's claim for the "expenses it has incurred in connection with the design, construction, operation and maintenance of the Well-D System, as well as governmental oversight costs incurred in connection with the Well-D System," (Morrison's Br., filing 178, at 5), therefore sounds in contribution, and because Morrison's § 107(a) liability for those costs has been established in administrative settlements and civil actions, is required to seek contribution under § 113(f). See ITT Industries, Inc. v. BorgWarner, Inc., 506 F.3d 452, 458 (6th Cir. 2007) ("To maintain the vitality of § 113(f), however, PRPs who have been subject to a civil action pursuant to §§ 106 or 107 or who have entered into a judicially or administratively approved settlement must seek contribution under § 113(f)."); ITT Industries, Inc. v. BorgWarner, Inc., 615 F. Supp. 2d 640, 646-47 (W.D. Mich. 2009); Appleton Papers Inc. v. George A. Whiting Paper Co., 572 F. Supp. 2d 1034, 1043 (E.D. Wis. 2008). Cf. Atlantic Research Corp. v. United States, 459 F.3d 827, 835-37 (8th Cir. 2006) (stating that "liable parties which have been subject to §§

---

[4]Indeed, it appears that Morrison's liability under § 107(a) was established before either of these AOCs was executed. The 1991 AOC includes a reference to "pending litigation," specifically, United States v. Morrison-Quirk Grain Corporation, No. CV88-L-720, (see Dravo's Index, filing 157, Ex. D at 33), and on May 4, 1990, I entered an order in that case granting the United States' motion for partial summary judgment on the question of Morrison-Quirk's liability under § 107(a). See United States v. Morrison-Quirk Grain Corp., No. CV88-L-720, 1990 WL 482139 (D. Neb. May 4, 1990). Morrison is the successor to Morrison-Quirk Grain Corporation. (E.g., Dravo's Index, filing 161, Ex. J at 9.)

106 or 107 enforcement actions are still required to use § 113, thereby ensuring its continued vitality," and that parties have a right to bring a § 107(a) action if they "have incurred necessary costs of response, but have neither been sued nor settled their liability under §§ 106 or 107" (emphasis added)). Morrison cannot elect to proceed under § 107(a) in an attempt to recover these same costs.

Morrison also cites Kotrous v. Goss-Jewett Co. of Northern California, 523 F.3d 924 (9th Cir. 2008), and Schaefer v. Town of Victor, 457 F.3d 188 (2d Cir. 2006), in support of its argument that it can elect to proceed under § 107(a) even though it "incurred response costs pursuant to an administrative consent order." (Morrison's Reply Br., filing 267, at 5-6.) In Kotrous, the California Regional Water Quality Control Board (RWQCB) "issued a Cleanup and Abatement Order requiring Goss-Jewett to investigate and clean the soil and groundwater" at a particular site, and Kotrous was directed to perform the work if Goss-Jewett failed to act. 523 F.3d at 927. "When Goss-Jewett failed to act, Kotrous incurred costs performing site characterization and investigation, and identification and investigation of PRPs." Id. The Ninth Circuit held that because Kotrous had not been subject to a § 106 or § 107 action, he could not seek contribution under § 113, but should instead proceed under § 107 for cost recovery. Id. at 934. The court did not analyze whether the RWQCB's abatement order constituted an administrative settlement within the meaning of § 113(f)(3)(B), as the Second Circuit did in W.R. Grace; instead, it considered only whether Kotrous could bring a contribution claim under § 113(f)(1). Kotrous does not stand for proposition that Morrison can elect to proceed under § 107(a) even after its liability to the United States has been resolved in an administrative settlement.

Similarly, the Second Circuit in Schaefer stated specifically that it "need not decide whether [the New York Supreme Court's 1994 Consent Judgment approving a 1992 Consent Order between Schaefer and the New York State Department of Environmental Conservation (DEC)] constitutes a judicially approved settlement" within the meaning of § 113(f)(3)(B), because Schaefer failed to satisfy the longer statute of limitations applicable under § 107(a). 457 F.3d at 202 n.19; see also id. at 203-210. The court added that if it were to consider the issue, it would be bound by a precedent holding that "when an administrative or judicially approved

7

settlement is with a state entity and concerns only non-CERCLA liability, a party may not bring a contribution action under § 113(f)(3)(B)." Id. at 202 n.19 (citing Consol. Edison Co. of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90 (2d Cir. 2005)) (emphasis added). As I explained above, the 1991 and 1996 AOCs entered into by Morrison and the EPA do resolve Morrison's CERCLA liability, and therefore the instant case is distinguishable from the precedent cited in Schaefer.

      Finally, Morrison argues that the consent decree that resolved United States v. Morrison Enterprises, LLC, No. 8:08cv332 (D. Neb. Oct. 1, 2008), "had no retroactive application with respect to the Well-D removal action which had been in operation long before the consent decree was entered." (Morrison's Reply Br., filing 267, at 6.) It is true that Morrison filed its original complaint in the instant case on July 3, 2008, before the consent decree was filed in United States v. Morrison Enterprises, LLC. It is also true that Morrison was obliged to incur Well D-related costs prior to the entry of the consent decree. But it does not follow from these facts that Morrison has a viable cost recovery claim under § 107(a). My finding that Morrison is required to seek contribution under § 113 does not depend on a retroactive application of the consent decree; rather, it is based on the fact that Morrison's § 107(a) liability for the costs it now seeks to recover from Dravo has been established in the AOCs in addition to the consent decree.[5]

      In short, I remain persuaded that Dravo is entitled to summary judgment on Morrison's § 107(a) claim to recover costs associated with the Well D System.

      **IT IS ORDERED** that Morrison's and Hastings' motion for partial summary judgment on liability, see filings 177 and 187, is denied as moot.

      Dated November 24, 2009.

                      BY THE COURT

                        s/ Warren K. Urbom
                        United States Senior District Judge

---

[5] I note in passing that Morrison has not disputed Dravo's argument that Morrison incurred the Well D costs at issue in this case under the terms of the 1991 AOC, the 1996 AOC, and the 2008 consent decree.